UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS MEDINA,<br><br>   Appellant,<br><br>   v.<br><br>WILLIAM P. VANDER POEL,<br><br>   Appellee. | 1:14-cv-01302 LJO<br><br>ORDER RE: APPEAL |

## I. INTRODUCTION

This case is on appeal from an Order of the bankruptcy court granting Appellee William P. Vander Poel's motion for summary judgment, which held that Appellant Luis Medina's claims against Appellee sounding in California's "Private Attorney General Act" ("PAGA"), Cal. Labor Code §§ 2699 -2699.3, were discharged under 11 U.S.C. § 727. Appellant's Opening Brief ("Medina's Brief), Doc. 11 at 1.

## II. UNDISPUTED FACTUAL AND PROCEDURAL BACKGROUND

According to the complaint filed in the underlying adversary proceeding, Appellant filed a lawsuit in federal court against Appellee and the company of which Appellee was a principal (Tule River Ranch) in January of 2008. Excerpts of Record ("ER"), v. I, tab 1, ("Complaint"), ¶ 6. The lawsuit

asserted that Appellee and his company were liable under various laws pertaining to wage and hour matters. *Id.* The federal case was dismissed and Appellant filed a similar case in state court in November of 2010. *Id.* at ¶¶ 7-8. This case also asserted PAGA claims, which authorizes the collection of civil penalties for alleged violations of the California labor code. *Id.* at ¶ 10.

Appellee filed for bankruptcy protection on August 8, 2012. *Id.* at ¶ 5. Seeking resolution as to the PAGA suit, Appellee filed two adversary proceedings against Appellant in bankruptcy court. First, Appellee filed the complaint at issue here, seeking a determination of dischargeability under Section 523(a)(7) of any fines that might be levied in the PAGA case. Complaint at ¶¶ 3-4. The other proceeding, initially filed March 10, 2014, seeks sanctions against Appellant for prosecuting the state law case in violation of the bankruptcy court's automatic stay order. *In re Vander Poel*, No. 14-01033, Docs. 1 & 89 (Bankr. E.D. Cal. Sep. 12, 2014).[1]

Appellee disputes having "any liability whatsoever" to Appellant and asserts that any debts he might be liable for under the PAGA case were discharged under the general discharge Appellee received on June 25, 2013. Brief of the Appellee ("Poel Brief") at 6,8. Appellee moved for summary judgment on the basis that a) Appellant failed to properly file an adversary proceeding in Appellee's bankruptcy case, b) all claims against Appellee had been discharged, and c) that Appellant's claims could not be considered "nondischargeable" under 11 U.S.C. § 523(a)(7). ER, v. II, tab 20 ("Poel MSJ"), at ¶¶ 16, 27-30, 34. The bankruptcy court granted the motion "in its entirety," holding that all claims asserted by Appellant were discharged pursuant to 11 U.S.C. § 727 on July 8, 2013. ER, v. IV, tab 57 ("1007 Order"). The 1007 Order did not elaborate on the bankruptcy court's reasoning, but its analysis of why the claims are discharged can be found in the hearing transcript. *See* ER, v. IV, tabs 58 & 59.

### III. JURISDICTION

District courts have jurisdiction to hear appeals "from final judgments, orders, and decrees ... of bankruptcy judges...." 28 U.S.C. § 158(a). However, such appeals "shall be heard by a judge panel of the

---

[1] This court may properly take judicial notice over all records in the underlying bankruptcy case. *In re E.R. Fegert, Inc.*, 887 F.2d 955, 958 (9th Cir. 1989).

bankruptcy appellate panel … unless … any other party elects … to have such appeal heard by the district court." *Id.* § 158(c)(1)(B). This court has jurisdiction to hear this case because the case is an appeal from the bankruptcy court's judgment and Appellant has elected to have it heard in this court in accordance with § 158(c)(1)(B).

## IV. ISSUES ON APPEAL

The issues on appeal are as follows:

1. Whether the bankruptcy court erred in concluding that civil penalties under the California Private Attorneys General Act ("PAGA"), Cal. Labor Code. § 2699, *et seq.*, do not fall within the exception to discharge set forth in 11 U.S.C. § 523(a)(7); and

2. Whether the Bankruptcy Court erred in granting summary judgment in favor of Vander Poel, on grounds that said claims were discharged under 11 U.S.C. § 727.

## V. STANDARD OF REVIEW

On appeal, a district court may "affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." *Cesar v. Charter Adjustments Corp.*, 519 B.R. 792, 795 (E.D. Cal. 2014). A district court reviews a bankruptcy court's factual findings "'under the clearly erroneous standard and its conclusions of law de novo.'" *Acequia, Inc. v. Clinton (In re Acequia, Inc.)*, 787 F.2d 1352, 1357 (9th Cir.1986) (quoting *Ragsdale v. Haller*, 780 F.2d 794, 795 (9th Cir.1986)). "Mixed questions of law and fact are reviewed de novo." *Beaupied v. Chang (In re Chang)*, 163 F.3d 1138, 1140 (9th Cir.1998).

## VI. LEGAL BACKGROUND

A. **Elements Required By 11 U.S.C. § 523(a)(7)**

Because discharge in bankruptcy is not intended to be a haven for wrongdoers, a debtor may not discharge "a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and [that] is not compensation for actual pecuniary loss[.]" 11 U.S.C. § 523(a)(7). While the Ninth Circuit has not evaluated this statute, most federal courts (including the Sixth, Third, Seventh Circuits) have taken a "plain meaning approach" towards it. *Hughes v. Sanders*, 469 F.3d 475, 478-79 (6th Cir. 2006); *In re*

*Rashid*, 210 F.3d 201, 208 (3d Cir. 2000); *Matter of Towers*, 162 F.3d 952, 956 (7th Cir. 1998); *see also In re McDowell,* 415 B.R. 612, 616 (Bankr. S.D. Fla. 2008) (collecting cases). Under this approach, four requirements must be met in order for a debt to be non-dischargeable under § 523(a)(7). The debt must: (1) be a fine, penalty, or forfeiture, (2) be payable to a governmental unit; (3) be payable for the benefit of a governmental unit, and (4) not be compensation for actual pecuniary loss. *Id.* at 617. The Supreme Court has held that the language of § 523(a)(7) is " is subject to interpretation" in the context of "the fundamental policy against federal interference with state criminal prosecutions." *Kelly v. Robinson*, 479 U.S. 36, 42 & 50 (1986).

Some lower courts have taken an even more expansive approach to contempt judgments. These cases dispensed with the requirement that fines be payable to a governmental unit so long as the fines are payable for the benefit of a governmental unit. *See, e.g. In re Allison*, 176 B.R. 60, 64 (Bankr. S.D. Fla. 1994).[2] These cases invoked a "totality of the circumstances" perspective on 523(a)(7), under which they found that fines "levied to vindicate the dignity and authority of the court" were non-dischargeable regardless of whether monies were paid to private parties or government units. *In re McDowell,* at 615 (collecting cases).

This Court is mindful that "when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Lamie v. U.S. Tr.,* 540 U.S. 526, 534 (2004). Further, the Court notes that this case involves penalties that may be assessed under California's civil, not criminal, laws. Accordingly, this Court concludes that in order for a debt to be non-dischargeable under 11 U.S.C. § 523(a)(7), all four elements must be met. *See In re DeMaskey*, No. 04-04123, 2008 WL 2991672, at *7 (Bankr. W.D. Wash. Aug. 1, 2008).

B. **Legal Background of PAGA**

The Ninth Circuit has recognized that California legislature enacted PAGA because it was "in

---

[2] The Ninth Circuit has cited to *In re Allison* for the general premise that "civil contempt sanctions are generally non-dischargeable where, as here, they are imposed to uphold the dignity and authority of the court." *In re Hercules Enterprises, Inc.*, 387 F.3d 1024, 1029 (9th Cir. 2004). The *Hercules* Court, however, was not faced with the issue of whether a private creditor could recover such sanctions. *See also In re DeMaskey*, No. 04-04123, 2008 WL 2991672, at *7 (Bankr. W.D. Wash. Aug. 1, 2008) (finding the Court's statements as to the ability to discharge civil contempt sanctions under 11 U.S.C. § 523(a)(7) were dicta).

the public interest to allow aggrieved employees, acting as private attorneys general, to recover civil penalties for Labor Code violations, with the understanding that labor law enforcement agencies were to retain primacy over private enforcement efforts." *Baumann v. Chase Inv. Servs. Corp.*, 747 F.3d 1117, 1121 (9th Cir. 2014) (quoting *Arias v. Superior Court*, 46 Cal. 4th 969, 980 (2009)). PAGA addressed two core problems that hampered the prosecution of labor act violations. *Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal. 4th 348, 379 (2014). First, district attorneys were reluctant to prosecute labor law violations because they were considered low priorities. *Id.* Second, there was a shortage of government resources that could not kept pace with the sprawling, and often "underground" economy. *Id.* The legislature's solution was to "deputize and incentivize employees uniquely positioned to detect and prosecute [] violations . . ." *Id.* at 390.

PAGA allows an aggrieved employee to commence an action against an employer "personally and on behalf of other current or former employees to recover civil penalties for Labor Code violations," if the California Labor and Workforce Development Agency ("LWDA") declines to investigate or prosecute an alleged labor law violation. *Baumann*, 747 F.3d at 1121. PAGA's text reads:

> Notwithstanding any other provision of law, any provision of this code that provides for a civil penalty to be assessed and collected by the Labor and Workforce Development Agency or any of its departments, divisions, commissions, boards, agencies, or employees, for a violation of this code, may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself and other current or former employees pursuant to the procedures specified in Section 2699.3.

Cal. Labor Code § 2699(a).

The California Supreme Court describes PAGA as a "procedural statute" which allows an aggrieved employee to recover civil penalties "that otherwise would be sought by state labor law enforcement agencies." *Amalgamated Transit Union, Local 1756, AFL-CIO v. Superior Court*, 46 Cal. 4th 993, 1003 (2009). In bringing a PAGA action, "the aggrieved employee acts as the proxy or agent of state labor law enforcement agencies, representing the same legal right and interest as those agencies, in a proceeding that is designed to protect the public, not to benefit private parties." *Id.* Thus, PAGA plaintiffs do not have property rights in their cases and cannot assign their interests in them. *Id.*

5

## VII. DISCUSSION

Fines and penalties for PAGA violations are non-dischargeable in bankruptcy if they meet the four elements of Section 11 U.S.C. § 523(a)(7). *See* Section VI(A), *supra*. A PAGA plaintiff must also have a private right of action to seek a determination of non-dischargeability in federal court.

A.  **"Fine, Penalty, or Forfeiture" and "Not Compensation for Actual Pecuniary Loss"**

PAGA provides for civil penalties of $100 per aggrieved employee per pay period, for an initial violation, if the employer has one or more employees. Cal. Lab. Code § 2699(f),(g). Subsequent violations incur fines of $200 per employee per pay period. *Id.* Seventy-five percent of the fines assessed are distributed to the LWDA "for enforcement of labor laws and education of employers and employees about their rights and responsibilities under this code, to be continuously appropriated to supplement and not supplant the funding to the agency for those purposes." Cal. Lab. Code § 2699(i). PAGA also allows for the recovery of attorneys' fees and costs. Cal. Lab. Code § 2699(g)(1).

Appellee argues that not all damages sought by Appellant satisfy the first prong of §523(a)(7) because Appellant also seeks attorneys' fees and costs. Poel Brief at 10. Appellant reads this as Appellee's conceding that statutory damages he seeks *do* meet this threshold. Medina's Reply Br., Doc. 20 at 3. This Court agrees. *See* Poel Brief at 10 ("While the first prong of § 523(a)(7) knocks out a portion of the damages sought by Medina through PAGA, Medina's failure to satisfy prongs two and three eliminate Medina's PAGA claim completely."). Moreover, there is no reason to believe that the "civil penalties" described in PAGA are anything but punitive in nature or that they are "compensation for actual pecuniary loss." Thus, the first and fourth prongs of the analysis are satisfied.[3]

B.  **"For the Benefit of A Governmental Unit"**

Appellant argues that PAGA penalties are assessed for the benefit of the LWDA, which is a government unit. Medina Brief at 8-9. The bankruptcy code defines a "governmental unit" as the:

> United States; State; Commonwealth; District; Territory; municipality;
> foreign state; department, agency, or instrumentality of the United States

---

[3] Based on a review of the hearing transcripts, the bankruptcy court did not rule on this issue. *See Reporter's Transcript of Hearing,* Case 14-01007, Doc. 103.

(but not a United States trustee while serving as a trustee in a case under
this title), a State, a Commonwealth, a District, a Territory, a municipality,
or a foreign state; or other foreign or domestic government.

11 U.S.C.A. § 101(27). It is undisputed that the LWDA meets this definition because it is an executive branch agency of the State of California. Cal. Govt. Code §§ 15554-15562. Appellant also argues that PAGA fines are "for the benefit of the LWDA" because they are intended to further its reach. Medina Brief at 9. PAGA provides that 75% of the civil penalties awarded in a class action be distributed to the LWDA "for enforcement of labor laws and education of employers and employees about their rights and responsibilities under this code, to be continuously appropriated to supplement and not supplant the funding to the agency for those purposes." Cal. Lab. Code § 2699(i). This is clearly a case where the funds will "benefit" LWDA.

C.   **"Payable to" a Governmental Unit**

Remaining is the question of whether fines in a PAGA case are "payable to" the State or to a private party asserting a claim. While the bankruptcy code does not define "payable," Black's Law Dictionary defines the word as a sum "that is to be paid." PAYABLE, Black's Law Dictionary (9th ed. 2009). "Pay," the root of the word, means "to discharge a debt by tender of payment due; to deliver to a creditor the value of a debt, either in money or goods for his acceptance." PAY, Black's Law Dictionary (6th ed. 1990) (citing Unif. Commercial Code §§ 2-511 & 3-604).[4] Applying these definitions to Section 523(a)(7), this Court concludes that Congress meant to exclude fines from automatic discharge to the extent that the creditor of the debt is a government unit. The bankruptcy code defines a creditor as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10)(A). A claim is "a right to payment, whether or not such right is reduced to judgment . . ." 11 U.S.C. § 101(5)(A).

The California Supreme Court has made clear that PAGA "does not create property rights or any other substantive rights" for private parties. *Amalgamated Transit Union*, 46 Cal. 4th at 1003. "It is

---

[4] The sixth edition is the most current edition of Black's Law Dictionary that defines the verb "pay."

7

simply a procedural statute allowing an aggrieved employee to recover civil penalties for Labor Code violations—that otherwise would be sought by state labor law enforcement agencies." *Id.* The private plaintiff has no claim to these statutory penalties; they are the property of the state. *Id.* Since the state is the party with the property interest in a PAGA claim, it is the party that has the right to payment. Thus, it is the creditor in the action; not Plaintiff.

This understanding is reinforced by the way PAGA explains how fees may be recovered by private plaintiffs. Fines that may be "assessed and collected" by the LWDA can be "recovered" by "an aggrieved employee on behalf of himself or herself and other current or former employees." Cal. Labor Code § 2699(a). Black's Law Dictionary defines "recover" as follows:

> 1. To get back or regain in full or in equivalence <the landlord recovered higher operating costs by raising rent>.
> 2. To obtain by a judgment or other legal process <the plaintiff recovered punitive damages in the lawsuit>.
> 3. To obtain (a judgment) in one's favor <the plaintiff recovered a judgment against the defendant>.
> 4. To obtain damages or other relief; to succeed in a lawsuit or other legal proceeding <the defendant argued that the plaintiff should not be allowed to recover for his own negligence>.

RECOVER, Black's Law Dictionary (9th ed. 2009). None of these definitions suggests a change in property rights. Thus, moneys that are "recovered" by one party might be "payable to" to a separate one. This is especially true if the California Legislature intended the word "recover" to imply "to succeed in a lawsuit or other legal proceeding" the way an attorney might "recover" damages on behalf of her client. Since both the plain text and the case law demonstrate that the State is the owner of PAGA claims and fines, and that it alone holds a property interest in them, this Court finds that these fines are "payable to" the State.

D. **Statutory Standing to Assert Nondischargeability**

In deciding whether Section 523(a)(7) would apply to fines and penalties Appellant seeks in his state law case, the bankruptcy court assumed that if the fines were made payable to the State, the Appellant would not have "standing" to assert non-dischargeability:

> So I presume that absent a clear intention in the statute otherwise, that we're to construe in favor of the debtor. Here, the word, quote, "To," could

8

> mean ultimately who gets the money or could serve as a gatekeeper on the key question of standing. Without a clear indication otherwise in the statute, which I do not find, I believe that it restricts standing.

Reporter's Transcript of Proceedings for July 30, 2014 ("MSJ hearing transcript"), ER, v. IV, tab 58, at 25. Similarly, many of Appellee's arguments center around the issue of whether Appellant "is permitted" to assert the right to claim that statutory fines he may collect under PAGA are non-dischargeable. Poel Brief, 16-23. This courts reads these arguments as asserting that Appellant does not have statutory standing under Section 523(a)(7).

This Court is mindful that Section 523(a)(7), like all other exceptions to discharge, should be defined "narrowly and in favor of the debtor." *Bullock v. BankChampaigne*, 133 S. Ct. 1754, 1760-61 (2013). However, as discussed above, the plain language prevails where, as here, the statute is clear. Section 523(a)(7) limits dischargeability to fines "payable to" a government unit. It does not limit who may bring such an action. Congress is certainly capable of limiting statutory standing- and does so elsewhere in the code where it exempts "the commencement or continuation of an action or proceeding by a governmental unit" from automatic stays that accompany a bankruptcy filing. 11 U.S.C.A. § 362(b)(4). Thus, a plain reading of both laws precludes this Court from finding, as Appellee argues, that the language of Section 362(b)(4) should be read into Section 523(a)(7).

This position is supported by the Ninth Circuit's holding in *In re Schimmels*, 127 F.3d 875 (9th Cir. 1997). In that case, private plaintiffs seeking to enforce a judgment obtained in a False Claims Act (FCA) case, filed an adversary proceeding seeking a determination that an FCA judgment would be non-dischargeable in bankruptcy under 11 U.S.C §§ 523(a)(7) and (a)(2)(A). *Id.* at 878-79. Like PAGA, the FCA is a *qui tam* action wherein "the government is the true party in interest . . . despite the relator's litigious role." *Id.* at 883. In the underlying case, the bankruptcy court found for the defendants, holding that the judgment was dischargeable. *Id.* The Ninth Circuit would not allow the U.S. government to proceed with a separate adversary proceeding based on the same facts, finding that its case was precluded by the judgment obtained against the private plaintiff under the doctrine of *res judicata*. *Id.* at 884. While statutory standing was not directly argued, the claim could not have had preclusive effect if

the private parties had no standing to bring them. *Id.* ("[T]he relator's control over a suit in which the government has declined to intervene may include the ability to make admissions on behalf of the United States, answer interrogatories, and trigger the doctrine of res judicata and collateral estoppel.") (emphasis removed).[5] As discussed above, the PAGA creates a similar relationship between private litigants and the State of California. Thus, private parties should have a similar right to seek dischargeability determinations when they do so on behalf of government agencies.

A bankruptcy court in Washington came to a similar conclusion, where it found that a collection company had standing to recover traffic fines on behalf of a county government, even though the fines would be initially paid to the company. *In re Stevens*, 184 B.R. 584, 586 (Bankr. W.D. Wash. 1995). In coming to this conclusion, the court found it critical that the county still maintained ownership of the claim and would ultimately receive the funds. *Id.* ("The debtor would have the Court conclude that a debt payable to an agent for the benefit of its principal is no longer payable to the principal and is hence dischargeable. This interpretation is contrary to general agency principles and creates no legally meaningful distinction for purposes of Section 523(a)(7).")

In coming to its decision on statutory standing, the bankruptcy court in this case relied heavily on both the legislative history of the bankruptcy code and the Ninth Circuit's holding in *In re Wade*, 948 F.2d 1122 (1991), but did not consider *In re Schimmel*. MSJ hearing transcript 25-28. First, the bankruptcy court felt that the legislative statement excluding "entities that owe their existence to state actions . . ." from the definition of government agencies meant that agents (who owe their existence to state actions) are excluded from 523(a)(7). MSJ Hearing Transcript at 25-26 (quoting 1978 U.S.C.A.A.N. 1787, 1977). Similarly, the issue before the *Wade* court was whether the Arizona Bar was a government unit that could avail itself of Section 362(b)(4). 948 F.2d at 1123. As discussed above, this Court does not read Section 523(a)(7) as incorporating the additional requirement that an action *be brought by* a government unit as is required by Section 362(b)(4); only that fines be *made payable to* a

---

[5] While Appellee is correct that plaintiffs in FCA actions may have a separate right of action under 11 U.S.C. § 1141(d)(1), the *Schimmels* Court explicitly ruled on the preclusive effect of determinations made under Sections 523(a)(2)(A) and (a)(7).

10

government unit; thus these authorities do not upset the conclusions reached here.

This Court is also not persuaded by the First Circuit Bankruptcy Appellate Court's summary observation that private parties may not pursue nondischargeability determinations under Section 523(a)(7). *In re Popa*, 214 B.R. 416, 422 (B.A.P. 1st Cir. 1997) aff'd, 140 F.3d 317 (1st Cir. 1998). First, the plaintiff in that case was looking to recover compensation for medical expenses incurred by the state of Massachusetts; no reference was made to whether the state's worker's compensation laws incorporate such a private right of action. *Id.* Second, the debt could not be discharged because it was for compensation of pecuniary loss, rather than a fine, penalty or forfeiture. *Id.* Third, holdings of bankruptcy appellate courts are not binding on federal district courts. *Bank of Maui v. Estate Analysis, Inc.*, 904 F.2d 470, 472 (9th Cir. 1990).[6] Thus, the facts and law of *In re Popa* are inapplicable to this case.

The rest of the bankruptcy court's analysis was based on the assumption that fines would not be paid directly to the LWDA, but flow through Appellant. MSJ Hearing Transcript at 25-29. Similarly, cases cited by Appellee for the position that actions pursued by "agents" of government units may not result in non-dischargeable fines were premised on findings that these "agents" were actually asserting *their own legal rights*, or they were distinct in other, critical ways. The bankruptcy court in *In re Dickerson,* 510 B.R. 289, 299 (Bankr. D. Idaho 2014), found it critical that a government unit had assigned its interests away to a collection agency ("Importantly, then, under the terms of its own complaint, as assignee, Collection was not seeking to recover the debts from Debtors on the County's behalf, but rather, it was asserting its own legal right to collect from them."). PAGA rights, by definition, cannot be assigned to Appellant. *Amalgamated Transit Union*, 46 Cal. 4th at 1003. The bankruptcy court in *In re Bailey* was confronted with an actual judgment which ordered sanctions be made payable to individual defendants, even though their employer, the University of New Mexico, was "the real party in interest." 202 B.R. 317, 319 (Bankr. D.N.M. 1995) ("The District Court had the option

---

[6] The sole issue before the First Circuit (which affirmed the decision of the BAP) was whether the debt was discharged under Section 523(a)(6). *In re Popa*, 140 F.3d at 317.

11

to make the sanction payable to the University. This, it did not."). Critically, there has been no judgment in Appellant's state law case ordering a payment to him or any other private party. Further, as Appellant points out, fines in PAGA cases are routinely ordered to be paid directly to the State. Medina Brief at 11 (citing examples of orders directing payment to LWDA in PAGA cases). Thus, *In re Bailey* is not on point given the procedural posture of this case.

Applying the text of 523(a)(7) and the Ninth Circuit's holding in *In re Schimillels* to PAGA's statutory language and the case law, this Court finds that a PAGA plaintiff has statutory standing to seek a determination of nondischargeabiliy for PAGA fines.

E. **Appellee's Policy Arguments**

Appellee argues that allowing private plaintiffs to prosecute claims under Section 523(a)(7) would lead to the absurd result that "any employee who has ever worked for a previously discharged debtor could file a PAGA lawsuit post-discharge at any time for pre-petition violations. . ." Poel Brief at 22. However, as Appellee also notes, such an employee is constrained by the statute of limitations. *Id.* Here, that limit is one year. *Amaral v. Cintas Corp*. No. 2, 163 Cal. App. 4th 1157, 1199 (2008) (quoting Cal. Civ. Proc. Code § 340)). This is not an unreasonable time frame. Moreover, if one were to buy into Appellee's logic there may be an even more absurd consequence, wherein the bankruptcy code would completely shield labor code violators from the consequences of their illegal activities. As the Ninth Circuit has observed, while the "'fresh start' is 'a central purpose of the [Bankruptcy] Code,' this opportunity is limited to the 'honest but unfortunate debtor.'" *In re Britton*, 950 F.2d 602, 606 (9th Cir. 1991) (quoting *Grogan v. Garner*, 498 U.S. 279 (1991)). "The Bankruptcy Code has other goals, such as protecting certain classes of creditors; among such creditors are those whom the debtor has harmed by egregious conduct." *Id.*

## VIII. CONCLUSION AND ORDER

For the reasons discussed above, the Court holds that the bankruptcy court erred in concluding that civil penalties under the California Private Attorneys General Act ("PAGA"), Cal. Labor Code. § 2699, et seq., do not fall within the exception to discharge set forth in 11 U.S.C. § 523(a)(7).

12

Accordingly, the Court holds that the bankruptcy court also erred in granting summary judgment in favor of Vander Poel, on grounds that said claims were discharged under 11 U.S.C. § 727.

Thus, the bankruptcy court's order is REVERSED, and the case is remanded for further handling consistent with this opinion.

IT IS SO ORDERED.

Dated:   **January 20, 2015**              /s/ Lawrence J. O'Neill
                                           UNITED STATES DISTRICT JUDGE